UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANANIAS SNIPES,

          Plaintiff,

    v.

SOUTHERN GLAZER'S WINE AND SPIRITS, LLC,

          Defendant.

Case No. 25-cv-10692-WHO

**ORDER ON MOTIONS TO REMAND AND JUDGMENT ON THE PLEADINGS**

Re: Dkt. Nos. 1, 25, 27, 30, 32, 33, 34

Plaintiff Ananias Snipes III ("Snipes") asserts various wage-and-hour claims against defendant Southern Glazer's Wine and Spirits, LLC ("SGWS") on behalf of himself and a putative class of similarly situated employees (collectively, "plaintiffs"). While this case was originally filed in Alameda County Superior Court, SGWS removed the case on a theory that Snipes's claims are preempted by the Labor Management Relations Act ("LMRA"). Snipes now moves to remand this case back to state court, and SGWS moves for judgment on the pleadings. For the reasons discussed below, the motion to remand is GRANTED for all claims but the Private Attorneys General Act ("PAGA") claim for failure to pay timely wages, which will be dismissed under SGWS's motion for judgment on the pleadings.

**BACKGROUND**

Snipes originally filed this putative class action in Alameda County Superior Court on October 23, 2025, alleging various violations of California's Labor and Business Code. *See* Declaration of Shiva S. Davoudian in Support of Defendant SGWS's Notice of Removal [Dkt. No. 1-1] Ex. A Complaint ("Compl."). The complaint raised eight causes of action:

> (1) Failure to pay minimum wages in violation of California Labor Code §§ 1194, 1194.2, 1197, and violation of IWC Wage Order § 3-4;

(2) Failure to pay overtime in violation of California Labor Code §§ 510, 1194, 1198, and violation of IWC Wage Order § 3;

(3) Failure to provide meal periods in violation of California Labor Code §§ 226.7, 512, and IWC Wage Order § 11;

(4) Failure to permit rest breaks in violation of California Labor Code § 226.7 and IWC Wage Order § 12;

(5) Failure to reimburse business expenses in violation of California Labor Code §§ 2800 and 2802;

(6) Failure to provide accurate itemized wage statements in violation of California Labor Code § 226 and IWC Wage Order;

(7) Failure to pay all wages due upon separation of employment in violation of California Labor Code §§ 201, 202, and 203; and

(8) Violation of Business and Professions Code §§ 17200, *et seq.*

*Id.* ¶¶ 37–101. Snipes brought the case on behalf of "[a]ll California citizens currently or formerly employed by any or all Defendants as non-exempt employees in the State of California at any time between September 30, 2021 and the date of class certification." *Id.* ¶ 20.[1]

On December 15, 2025, SGWS removed this case to the Northern District of California, claiming that the court had federal question jurisdiction over Snipes's claims. *See* Notice of Removal ("Rem.") [Dkt. No. 1] at 1–2. Specifically, SGWS asserted that Section 301 of the LMRA preempted the complaint, as it "include[d] claims that [could] only be brought as contractual claims under a CBA." *Id.* ¶ 16. It similarly asserted that Snipes's claims required "interpretation of the CBA," thus mandating preemption. *Id.* Snipes later filed an amended complaint on January 16, 2026, adding a cause of action under California's PAGA statute. *See* Amended Complaint ("FAC") [Dkt. No. 19] ¶¶ 102–09 (PAGA claim).

On March 5, 2026, Snipes filed a motion to remand this case back to the Alameda County Superior Court. *See* Motion to Remand Action to State Court ("Remand Mot.") [Dkt. No. 25-1]. SGWS filed an opposition on March 19, 2026, *see* Defendant SGWS's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Remand ("Remand Oppo.") [Dkt. No. 30],

---

[1] Snipes also sought to certify a subclass of employees for his waiting time claim, including any "members of the Class who separated their employment with any or all Defendants at any time between September 30, 2022 and the date of class certification." Compl. ¶ 21.

United States District Court
Northern District of California

and Snipes replied on March 26, 2026, *see* Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Remand ("Remand Repl.") [Dkt. No. 33].

On March 11, 2026, SGWS filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Defendant SGWS's Notice of Motion and Motion for Judgment on the Pleadings ("MJOP Mot.") [Dkt. No. 27].[2]  Snipes filed his opposition on March 25, 2026.  *See* Plaintiffs' Opposition to Defendant's Motion for Judgment on the Pleadings ("MJOP Oppo.") [Dkt. No. 32].  SGWS replied on April 1, 2026.  Defendant SGWS's Reply in Support of Motion for Judgment on the Pleadings ("MJOP Repl.") [Dkt. No. 34].  I heard oral argument on April 15, 2026.

## LEGAL STANDARD

**Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Dismissal under Rule 12(c) is warranted when, taking the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law."  *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017).  "[M]otions for judgment on the pleadings are functionally identical to Rule 12(b)(6) motions[.]"  *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (internal quotation marks omitted) (citing *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)).  "[U]nder both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'"  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Brooks v. Dunlop Mfg. Inc.*, No. C 10-04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011) (Breyer, J.)).  For both motions, dismissal may be based on either the lack of a cognizable

---

[2] SGWS also filed a request for judicial notice in support of their motion for judgment on the pleadings.  *See* Request for Judicial Notice ("RJN") [Dkt. No. 27].  It sought to introduce (1) plaintiff's September 30, 2025 letter to SGWS and the California Labor and Workforce Development Agency regarding their PAGA claim; (2) the parties' two collective bargaining agreements ("CBAs"); (3) a Memorandum of Understanding ("MOU") entered into by the parties on March 6, 2026; and (5) various California Minimum Wage Orders showing the state minimum wage in 2021, 2022, and 2026.  *See* RJN at 1–2.  SGWS's request is GRANTED.

legal theory or absence of sufficient facts alleged under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). As with 12(b)(6) motions, inferences must be drawn in favor of the nonmoving party. *See Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the well-pleaded facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief about the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

**Motion to Remand**

The party seeking removal bears the burden of establishing federal jurisdiction. *Provincial Gov't of Marinduque v. Placer Dome, In*c., 582 F.3d 1083, 1087 (9th Cir. 2009). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). A suit may be removed from state court to federal court only if the federal court would have had subject matter jurisdiction over the case. *See* 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). If it appears at any time before final judgment that the federal court lacks subject matter jurisdiction, the federal court must remand the action to state court. 28 U.S.C. § 1447(c).

**DISCUSSION**

Both parties' motions primarily concern whether Section 301 of the LMRA preempts

4

United States District Court
Northern District of California

Snipes's state law claims. Under the complete preemption doctrine, the "pre-emptive force of [a state] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc.*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Any claim based on "an area of state law [that] has been completely preempted," therefore, "is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* (citation omitted).

Section 301 of the LMRA provides, in relevant part: "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties." 28 U.S.C. § 185(a). "While 'a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court,' Section 301 'cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.'" *Alvarez v. Consol. Eng'g Labs.*, No. 25-cv-10576-SK, 2026 WL 734529, at *3 (N.D. Cal. Mar. 16, 2026) (Kim, M.J.) (quoting *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019), and *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)).

In the Ninth Circuit, Section 301 "preempts a plaintiff's state law claim only where the claim (1) 'arises entirely from' a collective bargaining agreement or (2) 'requires interpretation of' the agreement." *Id.*; *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1088 (9th Cir. 2025) (quoting *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920–21 (9th Cir. 2018) (en banc)). Accordingly, to determine whether Section 301 preemption applies, the Ninth Circuit applies a two-part test, first laid out in *Burnside v. Kiewit Pacific Corporation*, 491 F.3d 1053 (9th Cir. 2007), and later clarified in *Curtis v. Irwin Industries*. *See Alvarez*, 2026 WL 734529, at *3. At step one ("*Curtis* Step One"), courts must first determine whether the relief requested by the plaintiff "involves a right that exists solely as a result of the CBA." *Curtis*, 913 F.3d at 1152 (cleaned up). "If the right exists solely as a result of the CBA, then the claim is preempted [at Step One], and [the] analysis ends there." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016). If the right does not exist solely because of the CBA, then at step two ("*Curtis* Step Two"), courts must ask whether the state law claim is "substantially dependent on

analysis of a [CBA]." *Burnside*, 491 F.3d at 1059.

SGWS maintains that Snipes's (1) overtime, derivative wage statement, waiting time penalties, PAGA claim for paid sick leave, and failure to timely pay wages claims are preempted under *Curtis* Step One; and that his (2) minimum wage and meal and rest period claims are preempted under *Curtis* Step Two. Snipes moves to remand on his belief that I lack subject matter jurisdiction over this case, as each of his claims are not preempted under Section 301. I address each argument below.

## I.    *Curtis* Step One

At *Curtis* Step One, the "essential inquiry" is whether "the claim seek[s] purely to vindicate a right or duty created by the CBA itself." *Curtis*, 913 F.3d at 1152 (internal quotations omitted). "If so, 'then the claim is preempted [at Step One], and [the] analysis ends there.'" *Id.* (quoting *Burnside*, 491 F.3d at 1059). But if a claim involves a "right conferred upon an employee by state law, the claim is not preempted at [S]tep [O]ne." *Alvarez*, 2026 WL 734529, at *4 (citing *Renteria-Hinojosa*, 150 F.4th at 1089). "The collective bargaining agreement must be the 'only source' of the right the plaintiff seeks to vindicate." *Renteria-Hinojosa*, 150 F.4th at 1088–89 (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258 (1994)).

### A.    Overtime Claim

Snipes brings his overtime claim pursuant to California Labor Code Sections 510, 1194, and 1198, as well as IWC Wage Order § 3. *See* FAC ¶¶ 44–55. The complaint asserts that SGWS "failed to pay Plaintiff and Class Members overtime wages for all overtime hours worked" as required by California law. *Id.* ¶ 52.

Section 510 is interpreted in light of California Labor Code Section 514, which provides:

> Section 510 . . . do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

CAL. LAB. CODE § 514.[3]  To prevail on a preemption argument, therefore, SGWS must show that (1) a CBA exists, (2) the CBA addresses plaintiffs' hours of work and overtime concerns, and (3) the CBA pays overtime at premium rates and the base hourly pay is at least 30% higher than minimum wage in California.  *See id.*

The Ninth Circuit clarified in *Curtis* that if the CBA "meet[s] the requirements of section 514, [the employee's] right to overtime exists solely as a result of the CBA and therefore is preempted under § 301."  *Curtis*, 913 F.3d at 1154 (internal citation and quotation marks omitted).  The defendant "bears the burden of demonstrating that the requirements of Section 514 are satisfied."  *Nordman v. Bon Appetit Mgmt. Co.*, No. 23-cv-00703-DMR, 2023 WL 3006563, at *3 (N.D. Cal. Apr. 18, 2023) (Ryu, M.J.).

Here, neither party disputes that the first element—whether a CBA exists—is met.  Snipes and SGWS entered into two separate CBA agreements spanning back to June 1, 2020.  *See* Declaration of Christine Lewis in Support of Defendant's Notice of Removal ("Lewis Decl.") [Dkt. No. 1-2] Ex. A (CBA effective June 1, 2023 through May 31, 2026); Ex. B (CBA effective June 1, 2020 to May 31, 2023).  The parties' MOU also constitutes a CBA.  "[A] collective bargaining agreement is not limited solely to the specific provisions of the basic labor contract formally executed by the parties, but it may also include, among other things, written side agreements and oral understandings entered into by the parties to the collective bargaining relationship."  *Inlandboatmens Union of Pac. v. Dutra Grp.*, 279 F.3d 1075, 1079 (9th Cir. 2002), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).  "Notably, Section 301 has been broadly construed to include not only collective bargaining agreements, but also other 'agreement[s] between employers and labor organizations significant to the maintenance of labor peace between them.'"  *Graves v. IBT Loc. 572*, No. CV 11-5173 PSG (FMOx), 2011 WL 3625711, at *3 (C.D. Cal. Aug. 17, 2011) (quoting *Retail Clerks Int'l Ass'n, Loc. Unions No. 128 and 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962)).

---

[3] "Although § 514 only expressly refers to §[] 510 . . . it also qualifies § 1198.  Therefore, if the conditions set out in § 514 apply to Plaintiff, then Plaintiff's argument against preemption of the first underlying claim will fail."  *Sachs v. Pankow Operating, Inc.*, No. 2:21-cv-08998-AB (ADSx), 2022 WL 489696, at *3 (C.D. Cal. Feb. 16, 2022).

Where the parties disagree is whether the 130% requirement was met by the CBA. During the relevant period, SGWS concedes that "eight (8) personnel" subject to the CBA received "below 130% of the minimum wage rate." MJOP Mot. at 7. Snipes believes that this concession shows Section 514 preemption cannot apply here, as in his view, "all of the [CBA] conditions must apply to *all* covered employees, not just some, or one." MJOP Oppo. at 6 (emphasis added); *see, e.g.*, *Huffman v. Pac. Gateway Concessions LLC*, No. 19-cv-01791-PJH, 2019 WL 2563133, at *6 (N.D. Cal. June 21, 2019) (Hamilton, J.) ("It is apparent from the statute's plain language that a CBA must satisfy Section 514's substantive requirements with respect to all covered employees in order to render Section 510 inapplicable to any particular employee. Put another way, Section 514 concerns the merits of the agreement itself, not its treatment of any individual employee."). SGWS points out that "on or about March 6, 2026, SGWS and the Union entered into a Memorandum of Understanding that retroactively addressed the pay rate of these eight (8) personnel and increased their hourly rate such that they exceed the 130% threshold, including an agreement for Defendant to make retroactive payments to these eight personnel." MJOP Mot. at 6 (citing RJN Ex. D; Lewis Decl. ¶ 6, Ex. A). SGWS asserts that the MOU applies retroactively not only to the CBA, but to plaintiffs' overtime litigation as well. *See id.* at 8.

No case has squarely addressed whether a post-filing, retroactive MOU can cure a potential jurisdictional defect that existed when the complaint was originally filed. But both parties claim that *Oswald v. Murray Plumbing and Heating Corporation*, 82 Cal. App. 5th 938 (2022), helps their case. In *Oswald*, a California Court of Appeal panel considered whether a MOU that expressly stated it would apply to claims that "arise or are pending during the term of the parties' [CBA]" was both valid and retroactive. *Id.* at 944–45. Plaintiff claimed that while the MOU was valid, it could "not apply to him personally because it was signed after his employment ended, while his lawsuit was pending." *Id.* at 944. The court disagreed. *Id.* It recognized that "as a union member, [plaintiff] enjoy[ed] the benefits of the union's bargaining power," and therefore was "also subject to the burdens imposed by the CBA." *Id.* This ultimately included the MOU, which the court concluded was retroactive to his claims. *Id.* But in so finding, the court suggested the language of the MOU was important, as plaintiff could not cite any "limitation, restriction or

United States District Court
Northern District of California

qualifying language in the Agreement preventing his union from signing an MOU that is retroactive." *Id.*

Here, Snipes has the stronger argument: the facts in *Oswald* are notably different than those in this case. *Oswald* concerned arbitration; Snipes's overtime claim concerns statutory preemption under Section 514 of the California Labor Code. *See id.* While *Oswald* suggests that the retroactive modification of contractual rights, including arbitration, are permitted, it does not necessarily follow that all MOUs can follow suit—especially those that attempt to manufacture compliance with statutory preconditions to establish preemption. *See id.* And unlike the MOU in *Oswald*, which contained express language indicating that it would apply to claims that "ar[o]se or [were] already pending" at the time it was enacted, no similar language is present here. *See id.* SGWS's analogy to *Oswald* is not persuasive.

Because "[r]emoval jurisdiction is to be rejected in favor of remand to the state court if there are doubts as to the right of removal," I agree with Snipes that the overtime claim is not preempted at *Curtis* Step One. *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 2023 WL 6519308, at *2 (E.D. Cal. Oct. 5, 2023), *aff'd* 150 F.4th 1076 (9th Cir. 2025) (citing *Geographic Expeditions, Inc. v. Est. of Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010)). At a minimum, SGWS has failed to meet its "burden of demonstrating that the requirements of Section 514 are satisfied." *See Nordman*, 2023 WL 3006563, at *3.

### B.    Wage Statement, Waiting Time Penalties, and UCL Claims

SGWS also moves to dismiss Snipes's claims for wage statement penalties, waiting time penalties, and unfair business practice claims under the theory that "all [are] in whole or in part, derivative of [Snipes's] other substantive claims that are . . . preempted pursuant to Section 301 for the reasons described above." Remand Oppo. at 13. I disagree. As described in detail above, Snipes's overtime claim survives *Curtis* Step One. SGWS therefore cannot claim these causes of action are "derivative" to an already-preempted claim. *See id.* The record also shows each claim is soundly rooted in state law. Snipes raises his wage statement penalties claim under California Labor Code Section 226, *see* FAC ¶¶ 80–85, waiting time penalties claim under Sections 201 through 203 of the California Labor Code, *see id.* ¶¶ 86–91, and UCL claims under California

Business and Professions Code §§ 17200, *et seq.*, *id.* ¶¶ 92–101.  The FAC makes no reference to the CBA when raising these claims.  *See id.*  Even if it did, that the claims allege independent violations of state law would be sufficient to show the CBA is not "the 'only source' of the right the plaintiff seeks to vindicate."  *Renteria-Hinojosa*, 150 F.4th at 1088–89 (quoting *Norris*, 512 U.S. at 258).  Accordingly, these claims are not preempted at *Curtis* Step One.

## II.    *Curtis* Step Two

Under *Curtis* step two, courts must ask "whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration."  *Alaska Airlines*, 898 F.3d at 921.  "Claims are only preempted at step two to the extent there is an *active dispute* over the meaning of contract terms."  *Renteria-Hinojosa*, 150 F.4th at 1088 (emphasis added) (internal quotations omitted).  Put differently, "[a] hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim . . . [n]or is it enough that resolving the state law claim requires a court to refer to the CBA and apply its plain or undisputed language."  *Alaska Airlines*, 898 F.3d at 921–22 (cleaned up).

### A.    Minimum Wage Claim

Snipes's complaint alleges that the putative class was not paid minimum wages in violation of Sections 1194, 1194.2, and 1197 of the California Labor Code.  *See* FAC ¶¶ 37–43.  While the complaint does not identify the theory of liability for his minimum wage claims, SGWS believes it is an "off-the-clock" theory.  Remand Oppo. at 9–10.  To support its conclusion, SGWS points to a "September 30, 2025 letter that Plaintiff submitted to the California Labor and Workforce Development Agency pursuant to California Labor Code section 2699.3(a)(1)" that alleges SGWS had a "policy and practice of requiring . . . [Plaintiff] and aggrieved employees to work off-the-clock . . ."  *Id.* at 9; RJN Ex. A ("PAGA Letter").  SGWS also points to plaintiffs' motion to remand, which noted that "Plaintiff and the putative class were required to work through their meal periods (e.g. off-the-clock)."  *Id.*  I agree with SGWS that the record shows an "off-the-clock" theory applies to plaintiffs' minimum wage claim.

SGWS now claims that Snipes's minimum wage theory is preempted under *Curtis* Step Two.  Specifically, it notes that the parties' CBA include "various provisions governing the hours

of work and rates of compensation." MJOP Mot. at 8. These include:

> Any employee working a workweek that includes Sunday (e.g., Sunday to Wednesday or Sunday to Thursday) will receive a base wage rate One Dollar ($1.00) per hour higher than the wage rate for the same job classification that does not include Sunday work, for all hours worked during said workweek.
>
> . . .
>
> [W]hen notified to report to work by the Employer and upon reporting, shall be guaranteed six (6) hours work or six (6) hours pay (for an eight-hour shift and eight (8) hours work or eight (8) hours pay for a ten-hour shift) and all employees working as drivers shall be guaranteed eight (8) hours work or eight (8) hours pay (for an eight-hour shift and ten (10) hours work or ten (10) hours pay for a ten-hour shift.
>
> . . .
>
> If an employee is required to report for work earlier than his/her scheduled starting time on any day, without at least thirty-six (36) hours advance notice, he/she shall be paid at the rate of time and one-half (1 ½) for the time worked on such day prior to his/her scheduled starting time for that day . . .

CBA Arts. 7.1.1, 7.1.3, 7.4.1; Lewis Decl. ¶¶ 6–7, Ex. A pp. 20, 22, Ex. B pp. 19, 21. Relying on these provisions, SGWS argues that resolving the minimum wage claim would make an "interpretation of the provisions of the Hourly CBAs . . . necessary," as they "set forth minimum rates of pay and an analysis of these provisions [would be] required in order to determine whether Defendant paid employees at the correct minimum rates of pay." MJOP Mot. at 9. While plaintiffs do not respond to SGWS's claims in their MJOP Opposition, they address this line of argument in their Motion to Remand. There, plaintiffs note that because their minimum wage claims rely on an off-the-clock theory, "resolving Plaintiff's claims for wages only requires, at most, *referencing* the CBA, which simply sets forth the rates at which Plaintiff and putative class members are to be paid by the hour." Remand Mot. at 5.

While SGWS identifies specific provisions that they claim "must be considered and interpreted together," *see* Remand Oppo. at 10, they have failed to identify any "active dispute over the meaning" of the provisions that is required under *Curtis* Step Two, *see Renteria-Hinojosa*, 150 F.4th at 1088 (cleaned up). Because the "burden of establishing that removal is proper" rests on the defendant, *see Nordman*, 2023 WL 3006563, at *2, and because courts must

11

"resolve[] all ambiguity in favor of remand to state court," *see Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009), I agree that SGWS's remand claim fails at Curtis Step Two.

### B.     Meal and Rest Period Claims

Plaintiffs' third and fourth claims assert violations of various meal and rest period provisions under California law.  FAC ¶¶ 56–64 (meal period violations under California Labor Code §§ 226.7 and 512); *id.* ¶¶ 65–71 (rest period violations under California Labor Code § 226.7).  Like its minimum wage argument, SGWS turns to the parties' CBA as evidence that these claims are preempted.  Here, SGWS highlights Article 7.1.1, which states:

> Forty (40) hours shall constitute a week's work for office, drivers, warehousepersons, mechanics, and cross-classification employees to be worked in five (5) days of eight (8) hours continuously except for a lunch period of not to exceed one (1) hour, Sunday through Thursday or Monday through Friday or four (4) days of ten (10) hours continuously except for a lunch period not to exceed one (1) hour, Monday through Thursday, Tuesday through Friday or Sunday through Wednesday, inclusive, and including recognized legal holidays and State and Federal election days. A fifteen (15) minute rest period shall be allowed for each one half (1/2) shift. An additional rest period shall be allowed if at least two (2) hours of overtime is anticipated. Employees may not leave the company property during rest periods, unless combined with a meal period.

MJOP Mot. at 10 (citing Hourly CBA, Art. 7.1.1).

While SGWS maintains that "resolution of Plaintiff's meal and rest break claims will . . . require analysis of the CBAs given that the CBAs specifically provide for and define meal and rest periods," MJOP Mot. at 10, it again fails to make any argument that there is an "active dispute" over the meaning of these terms, *Renteria-Hinojosa*, 150 F.4th at 1088.  Nor is there any evidence that SGWS's basis for removal of this claim was anything more than a "hypothetical connection between the claim and the terms of the CBA."  *Alaska Airlines*, 898 F.3d at 921–22 (cleaned up).  Plaintiffs' request to remand this claim is GRANTED.

### C.     Expense Reimbursement

The final cause of action SGWS claims to be preempted under *Curtis* Step Two is for the failure to reimburse business expenses in violation of California Labor Code Sections 2800 and 2802.  *See* FAC ¶¶ 72–79.  As SGWS notes, some "courts . . . find expense reimbursement claims preempted where: (i) a union-represented plaintiff makes general, non-specific expense

United States District Court
Northern District of California

reimbursement allegations; and (ii) the applicable CBA contains specific provisions regarding expense reimbursement." MJOP Mot. at 10–11 (citing *Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-cv-07874-LB, 2022 WL 161892, at \*4–5 (N.D. Cal. Jan. 18, 2022) (Beeler, M.J.); *Linebarger v. Graphic Packaging Int'l, LLC*, No. SACV 20-00309 JVS (JDEx), 2020 WL 1934958, at \*6 (C.D. Cal. Apr. 22, 2020); *Gay v. Pac. Steel Grp.*, Nos. 20-cv-08442-HSG; 21-cv-03446-HSG, 2023 WL 6048784, at \*20 (N.D. Cal. Sept. 15, 2023) (Gilliam, J.). Because plaintiff makes "vague and overly broad expense reimbursement allegations, as compared to the CBA's specific provisions for reimbursement of certain expenses," SGWS concludes that "resolution of this claim will turn on the analysis of and interpretation of CBA provisions." MJOP Mot. at 11.

I disagree. Section 2800 of the California Labor Code indicates that employers "shall in all cases indemnify his employee for losses caused by the employer's want of ordinary care." CAL. LAB. CODE § 2800. Section 2802, in turn, requires employers to "indemnify [an] employee for all necessary expenditures . . . incurred by the employee in direct consequence of the discharge of his or her duties." *Id.* § 2802(a). These protections are "non-waivable under California law." *Carrillo v. Monterey Mech. Co.*, No. 24-cv-09202-LJC, 2025 WL 2615064, at \*15 (N.D. Cal. Sept. 10, 2025) (Cisneros, M.J.) (citing *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 951–52 (2008)).[4] Accordingly, "it is not clear 'why the Court would need to reference the CBA at all, let alone interpret it,' to resolve [plaintiff's] claim[s]." *Id.* (quoting *Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 816 (C.D. Cal. 2020)). That a CBA "may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." *Wilson-Davis*, 434 F. Supp. 3d at 816 (internal quotations omitted). Because Snipes raises a non-waivable state law claim, it is likely that this claim fails at *Curtis* Step One, as the claim does not seek "purely to vindicate a right or duty created by the CBA itself." *Curtis*, 913 F.3d at 1152. "[E]ven if there *were* some need to consult the CBA to resolve" the parties' dispute, however, SGWS has "not shown that any dispute

---

[4] Specifically, California Labor Code section 2804 prohibits "[a]ny contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof." CAL. LAB. CODE § 2804. This provision extends to the entire article, including both Sections 2800 and 2802.

would involve 'disagreement about the meaning or application of any relevant CBA-covered terms of employment' as is required for preemption at Step 2[.]" *Carrillo*, 2025 WL 2615064, at *16 (quoting *Alaska Airlines*, 898 F.3d at 927).  SBWS's argument independently fails on this ground.[5]

## III.   PAGA Claim

Snipes added a claim under the Private Attorney Generals Act ("PAGA"), California Labor Code §§ 2698 *et seq.*, in their Amended Complaint.  *See* FAC ¶¶ 102–109.  PAGA claims are subject to Section 301 preemption where the underlying Labor Code violations are subject to preemption.  *Curtis*, 913 F.3d at 1150 n.3.  But "a preemption determination as to one PAGA claim" does not "appl[y] to the remaining PAGA claims simply because they share the same statutory cause of action."  *See Renteria-Hinojosa*, 150 F.4th at 1095.

Snipes's complaint alleges SGWS committed the following violations of PAGA:

> a.  violation of Labor Code §§ 201, 202, 203, 204, 210, 233, 246, 510, 1182.12, 1194, 1197, and 1198 for failure to timely pay all earned wages at the correct rate of pay (including minimum wage, sick pay, and overtime wages) owed to Plaintiff and other aggrieved employees during employment and upon separation of employment as herein alleged;
>
> b.  violation of Labor Code §§ 226.7 and 512 for failure to provide meal periods to Plaintiff and other aggrieved employees and failure to pay premium wages for missed meal periods as herein alleged;
>
> c.  violation of Labor Code § 226.7 for failure to permit rest breaks to Plaintiff and other aggrieved employees and failure to pay premium wages for missed rest periods as herein alleged;
>
> d.  violation of Labor Code § 226 for failure to provide accurate itemized wage statements to Plaintiff and other aggrieved employees as herein alleged;
>
> e.  violation of Labor Code §§ 1174 and 1174.5 for failure to maintain accurate and complete records showing, among other things, the hours worked daily by and the wages paid to aggrieved employees; and
>
> f.  violation of Labor Code §§ 2800 and 2802 for failure to reimburse Plaintiff and other aggrieved employees for necessary business expenses as herein alleged.

FAC ¶ 105.  Because district courts must "consider the preemption issue for each claim

---

[5] Plaintiffs' remaining claims for overtime pay, derivative wages, waiting time penalties, and UCL violations similarly survive *Curtis* Step Two, as SGWS fails to show a material dispute over the interpretation of the relevant provisions of the CBA.

United States District Court
Northern District of California

United States District Court
Northern District of California

separately" to determine if PAGA applies, I address each below. *Jimenez v. Young's Mkt. Co., LLC*, No. 21-cv-02410-EMC, 2021 WL 5999082, at *7 (N.D. Cal. Dec. 20, 2021) (Chen, J.).

First, SGWS asserts that Snipes's "derivative PAGA claim for failure to maintain records," as well as the "previously discussed Labor Code claims" must fail because they are preempted. *See* MJOP at 13–15. This contention lacks merit in light of my conclusion that no cause of action is preempted under *Curtis*.

SGWS also seeks to preempt Snipes's failure to pay sick leave claim under Labor Code Section 246. Section 245.5(a)(1) of the Labor Code exempts liability under Section 246 for:

> [Any] employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for paid sick days or a paid leave or paid time off policy that permits the use of sick days for those employees, final and binding arbitration of disputes concerning the application of its paid sick days provisions, premium wage rates for all overtime hours worked, and regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

CAL. LAB. CODE § 245.5(a)(1). As SGWS acknowledges, "[m]ost of the elements of the Section 245.5(a)(1) exemption are the same as the elements of the Section 514 exemption," including that the CBA provide a "regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate." *Id.*; MJOP Mot. at 13–14. Because SGWS cannot establish as a matter of law that the MOU cured the issues in the original CBA regarding the 130% requirement at the time plaintiffs filed suit, their sick time argument fails on similar grounds.

Finally, I agree with SGWS that Snipes's claim for failure to timely pay wages may be DISMISSED. Plaintiff raises his timely payment claim pursuant to Section 204 of the Labor Code. FAC ¶ 105(a). This statute is qualified by subsection (c), which notes that the statute does not apply "when employees are covered by a collective bargaining agreement that provides different pay arrangements." CAL. LAB. CODE § 204(c). Here, the CBAs show that wages were to be paid on a weekly basis. *See* Hourly CBA, Lewis Decl. ¶¶ 6–7, Exs. A, B. By contrast, Section 204(a) establishes a default bimonthly pay timing rule. *See* CAL. LAB. CODE § 204(a) ("All wages . . . earned by any person in any employment are due and payable twice during each calendar month[.]"). Because the statute expressly differs from the pay schedule set forth in the CBA, I

will DISMISS plaintiffs' PAGA claim under Section 204.

## IV. Arbitration

SGWS claims that to the extent "any of Plaintiff's claims are not preempted by Section 301 of the LMRA, the claims should still be dismissed because they are subject to the Hourly CBA's grievance and arbitration procedures." MJOP Mot. at 16. SGWS asserts that all of Snipes's arguments are "subject to arbitration pursuant to the arbitration process in Article 19 of the CBA," which states:

> It is the desire of both parties to this Agreement that disputes and grievances arising hereunder involving interpretation or application of the terms of this Agreement shall be settled amicably or if necessary, by final and binding arbitration as set forth herein.

*Id.* at 18; Hourly CBA, Lewis Decl. ¶¶ 6–7, Ex. A p. 34, Ex. B p. 33. It also contends that Article 2.3.2 "provides that all of Plaintiff's Causes of Action are disputes that arise under the CBA:"

> The Employer agrees to comply with all applicable state and federal wage and hour laws including, but not limited to, the Fair Labor Standards Act, the California Labor Code (including the Labor Code Private Attorneys General Act of 2004), California's unfair competition laws (Cal. Bus. & Prof. Code§ 17200 et seq.), and any applicable Wage Orders, including specifically Wage Order 7 governing the mercantile industry. . . Any and all claims by employees against the Employer, its agents and/or employees, alleging violations of these laws (including, but not limited to, claims for wages, overtime, premium pay, meal and rest break violations, waiting time penalties, inaccurate wage statements, improper deductions, unlawful reimbursements, and unfair business practices) and/or any common law claims for same (including, but not limited to, claims alleging conversion, breach of contract and/or implied contract, unjust enrichment and/or quantum meruit) shall be subject to the grievance and arbitration procedures set forth in Article 19 herein as the sole and exclusive remedy and forum for pursuit of said claims. . . . The Union and the Employer agree that this clause is intended to constitute a full waiver of the right of employees and/or the Union to pursue such claims in court and the right to have said claims heard before a jury . . .

MJOP Mot. at 18–19; Hourly CBA, Lewis Decl. ¶¶ 6–7, Ex. A p. 4, Ex. B p. 4. Relying on this provision, SGWS concludes that there is "no legitimate dispute that all of the causes of action in the FAC are subject to the contractual grievance and arbitration procedures of the Hourly CBA and must be dismissed." MJOP Mot. at 19.

SGWS's argument fails to recognize that the Ninth Circuit and Supreme Court have

squarely rejected this argument.  In *Renteria-Hinojosa*, a Ninth Circuit panel addressed whether a CBA "effectively waived [plaintiff's] right to bring . . . state law claims in court," as the plaintiff's "only option was to pursue her claims through grievance arbitration."  150 F.4th at 1091.  The panel found the Supreme Court's decision in *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), dispositive.  *Id.*  There, the Court noted that when the "heart of the [state law] complaint [is] a . . . clause in the collective bargaining agreement,' that complaint arises under federal law."  482 U.S. at 394 (quoting *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558 (1968)).  But where a plaintiff "asserts what is plainly a state-law claim," "§ 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense."  *Id.* at 398–99; *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc), *as amended* (Aug. 27, 2001).

Applying the rationale of *Caterpillar*, the *Renteria-Hinojosa* court concluded that the defendant could not invoke the CBA's arbitration clause to argue that remand back to state court was improper.  150 F.4th at 1092.  The court explained in detail:

> Sunsweet's argument for federal removal jurisdiction is foreclosed by *Caterpillar* because, as discussed, Renteria-Hinojosa's claims do not arise from the CBAs or require interpretation of the CBAs. Rather, Sunsweet invokes the CBA dispute resolution provisions in its defensive arguments. Although Sunsweet does not label its arguments as "defenses," that is what they are. Sunsweet argues that the 2021–2023 CBA waived Renteria-Hinojosa's right to litigate her claims in court and, therefore, Renteria-Hinojosa is in the wrong forum—she must pursue her claims in grievance arbitration. The argument that a plaintiff has contractually waived her right to a judicial forum is a defense . . .

> As the Court recognized in *Caterpillar*, "when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives." 482 U.S. at 398, 107 S.Ct. 2425. But the fact that a state court may need to interpret the CBA to determine whether Renteria-Hinojosa can maintain her claims in state court does not change the state law nature of her claims and does not create § 301 jurisdiction under *Caterpillar. Id.* at 398–99, 107 S.Ct. 2425. A state court may therefore "look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering § 301 preemption." *Cramer*, 255 F.3d at 692; *see also Alaska Airlines*, 898 F.3d at 921–22 (listing waiver of state law rights among other analyses that a state court might be required to perform without triggering preemption).

17

*Id.* at 1093.

So too here. While SGWS does not label its arbitration argument as a "defense," "that is what [it is]." *Id.*; *see id.* ("The argument that a plaintiff has contractually waived her right to a judicial forum is a defense."). While SGWS may ultimately be correct that Snipes waived his right to a judicial forum under the CBA, as described above, Snipes's claims do not "arise under" the CBA; they arise under California law. *See id.* at 1093. This alone does not provide a basis for jurisdiction under *Caterpillar*. 482 U.S. at 398. Even so, "the fact that a state court may need to [later] interpret the CBA [on remand] to determine whether [a plaintiff] can maintain her claims in state court does not change the state law nature of her claims and does not create § 301 jurisdiction under *Caterpillar*." *Renteria-Hinojosa*, 150 F.4th at 1093.

In light of *Renteria-Hinojosa*, SGWS's argument that the grievance and arbitration procedures preclude consideration of plaintiffs' complaint is unavailing. I DECLINE to dismiss the complaint on these grounds.[6]

## CONCLUSION

For the foregoing reasons, SGWS's motion for judgment on the pleadings is GRANTED as to plaintiffs' PAGA claim for failure to timely pay wages, but DENIED as to the rest. Plaintiffs' motion to remand is GRANTED. I HEREBY REMAND this action to the Alameda County Superior Court. All case deadlines and hearings are HEREBY VACATED. The Clerk is instructed to remand this file.

**IT IS SO ORDERED.**

Dated:    April 29, 2026

_____
William H. Orrick
United States District Judge

---

[6] SGWS finally argues that if I were to find certain claims not preempted, Snipes's claims are "still within [my] supplemental jurisdiction and thus subject to removal." Remand Oppo. at 18. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Because Snipes's causes of action all arise under state law and are not preempted, no claims in this action involve federal law, making supplemental jurisdiction inapposite. *See Alvarez*, 2026 WL 734529, at *10.

18